IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JULIAN KENNETH HARDIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 113-067 |
| | ) | (Formerly CR 111-365) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate at the Federal Correctional Institution in Jesup, Georgia, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss Petitioner's § 2255 motion. (Doc. no. 3.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion to dismiss be **GRANTED**, that the instant § 2255 motion be **DISMISSED**, and that this civil action be **CLOSED**.

## I. BACKGROUND

On December 7, 2011, Petitioner was indicted on one count of manufacture of marijuana in violation of 21 U.S.C. § 841(a)(1), one count of possession of firearms and ammunition in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), one count of possession of firearms by a prohibited person in violation of 18 U.S.C. §§ 922(g)(3) & 924, and a forfeiture allegation. United States v. Hardin, CR 111-365, doc. no. 1 (S.D. Ga. Dec. 7, 2011) (hereinafter "CR 111-365"). Petitioner retained

counsel and filed a motion to suppress on February 13, 2012. (Id., doc. no. 37.) After a hearing on March 12, 2012, the Court issued a Report and Recommendation ("R&R") on March 26, 2012, recommending denial of the motion to suppress. (Id., doc. no. 49.) On April 19, 2012, United States District Judge J. Randal Hall adopted the R&R, thereby denying Petitioner's motion. (Id., doc. no. 51.) That same day, a notice was issued scheduling Petitioner's jury trial for June 25, 2012. (Id., doc. no. 52.) However, on May 2, 2012, the parties filed a joint motion to continue the trial (id., doc. no. 54), which Judge Hall granted, giving the parties additional time to negotiate a plea agreement and prepare for trial (id., doc. no. 56).

Thereafter, on July 31, 2012, Petitioner pleaded guilty to one count of manufacture of marijuana in violation of 21 U.S.C. § 841(a)(1), and one count of possession of firearms by a prohibited person in violation of 18 U.S.C. §§ 922(g)(3) & 924. (Id., doc. nos. 59, 60.) Petitioner also agreed to forfeit the property listed in the plea agreement, and the government agreed not to seek forfeiture of real property. (Id., doc. no. 60, pp. 4, 5-8.) Petitioner's written plea agreement also included a broad appeal and collateral attack waiver provision that stated in relevant part:

> [T]o the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.

(Id., doc. no. 60, p. 5.) In addition, by signing the plea agreement, Petitioner attested that

he had read and understood the plea agreement and that it accurately set forth the terms and conditions of his agreement with the government. (Id. at 15.)

During the change of plea hearing, Judge Hall reviewed the counts in the indictment. (Id., doc. no. 77, pp. 4-6.) Petitioner testified under oath that he understood what he was being charged with, had reviewed the indictment with his attorneys, and had as much time to speak with his attorneys about the charges as he wanted.[1] (Id. at 6.) Petitioner also testified that he was satisfied with the assistance he had received from his attorneys. (Id. at 8.)

Judge Hall next explained the rights that Petitioner would waive by pleading guilty, and Petitioner affirmed he understood those rights. (Id. at 8-11.) Petitioner further testified that he had read and discussed the plea agreement with his attorneys before he signed it, that his attorneys were authorized to negotiate the plea agreement for him, and that he understood that he was agreeing that the facts contained in the agreement were true. (Id. at 11-12.) In addition, Judge Hall reviewed the appeal and collateral attack waiver as follows:

> And I also note that by signing the plea agreement you are agreeing to give up or waive your right to directly appeal your conviction and sentence on any ground. And also the right to attack that conviction and sentence in a post-conviction proceeding. Now, there are three exceptions to that waiver. First, if the Government should decide to appeal your sentence then you would have the right to appeal. If your final sentence is higher than the statutory maximum for your particular offenses then you would have the right to appeal. And, finally, if your final sentence exceeds the sentencing guideline range for your particular case then you

---

[1] Petitioner was represented by a new attorney at the plea hearing, as his original attorney was granted a leave of absence for medical reasons on May 4, 2012. (CR 111-365, doc. no. 55.)

3

> would the right to appeal that sentence. Otherwise, by signing the plea agreement you are, in fact, giving up or waiving your rights to appeal. Now, is this what you agreed to?

(Id. at 13-14.) Petitioner answered, "Yes, sir, it is," affirming that he understood the explanation of the plea agreement, including the appeal and collateral attack waiver. (Id. at 14.) Petitioner also affirmed that, other than the promises the government made in the plea agreement, no one had made him any promises in order to get him to plead guilty, nor had he been forced or pressured to do so. (Id. at 3, 14, 30.)

Judge Hall then stated the maximum penalties for each of the crimes to which Petitioner was pleading guilty, and Petitioner affirmed that he understood such penalties. (Id. at 14-15.) Judge Hall then explained the applicability and advisory nature of the United States Sentencing Guidelines ("U.S.S.G."), and that a probation officer would prepare a Presentence Investigation Report ("PSI"), which Judge Hall would rely upon to determine Petitioner's sentence. (Id. at 16-18.)

Next, Judge Hall reviewed the elements of the charges in Counts One and Three of the indictment and explained that the government would have to prove those elements beyond a reasonable doubt to obtain a conviction. (Id. at 18-19.) When asked by Judge Hall if he admitted that his conduct satisfied such elements, Petitioner responded "Yes, sir." (Id. at 18-19.) Following the government's presentation of a factual basis for the guilty plea, during which Petitioner's counsel cross-examined the government witness, Petitioner admitted that he had committed the crime charged in Count One, and stated that he "had some marijuana growing for personal use." (Id. at 29.) Addressing Count Three of the indictment, Judge Hall asked Petitioner, "[D]o you admit to the Court that

4

you were a user of marijuana?" (Id.) Petitioner responded, "Yes sir, I do." (Id.) Judge Hall then asked if Petitioner was in possession of the firearms and ammunition as set forth in the plea agreement and the indictment, and Petitioner affirmed that he was. (Id. at 29-30.)

In response to a question asked by Judge Hall, Petitioner again averred that no one had forced or pressured him to plead guilty. (Id. at 30.) Judge Hall asked Petitioner if he still wanted to plead guilty to Counts One and Three of the indictment, to which he responded, "Yes, sir. I do." (Id.) Judge Hall then asked if he was pleading guilty because he was, in fact, guilty of the crimes charged in Counts One and Three, to which Petitioner responded, "Yes, sir." (Id.) Thus, Judge Hall found that Petitioner was competent, that he fully understood the charges against him, and that his decision to plead guilty was knowing, voluntary, "and not the result of any force, pressure, threats, or promises other than the promises made by the Government in the plea agreement." (Id. at 31.) Accordingly, Judge Hall found Petitioner guilty of the offenses to which he was pleading. (Id.)

At sentencing, Judge Hall found that Petitioner's total offense level was 29, which included a full three point reduction for acceptance of responsibility, and his criminal history category was III, both of which were consistent with the PSI, to which neither party objected. (Id., doc. no. 73, pp. 3-5.). These findings resulted in an advisory Sentencing Guidelines range of 108 to 135 months of imprisonment, two to three years of supervised release, a $15,000 to $150,000 fine, and a $200 special assessment. PSI ¶¶ 38, 45, 69, 73, 79. In total, Judge Hall sentenced Petitioner to a 108-month term of

imprisonment, three years of supervised release, a fine of $15,000, and a $200 special assessment. (CR 111-365, doc. nos. 69, 73.) Judge Hall also reiterated at the sentencing hearing that Petitioner had waived the right to appeal or attack the sentence in any post-conviction proceeding. (Id., doc. no. 73, p. 29.)

Petitioner then filed the instant § 2255 motion, signed by him on April 19, 2013, raising four grounds for relief. (Doc. no. 1.) In Ground One, Petitioner claims he received ineffective assistance of counsel because his attorney failed to file a post-judgment appeal challenging the constitutionality of 18 U.S.C. § 922(g)(3) and the denial of his motion to suppress. (Id. at 4.) Petitioner claims that his attorney initially advised him that he could not appeal, but then stated that he would file an appeal but failed to do so. (Id. at 3, 4.) In Grounds Two and Four, Petitioner argues that he received ineffective assistance of counsel due to his attorney's failure to investigate and challenge the constitutionality of § 922(g)(3) prior to his guilty plea. (Id. at 4-5.) Petitioner asserts his counsel should have argued that § 922(g)(3) is unconstitutional because it violates his Second Amendment rights and because the definition of a prohibited person is unconstitutionally vague. (Id. at 3-5.) In Ground Three, Petitioner claims that his guilty plea was not knowing and voluntary because he is actually innocent of the charge in Count Three of the indictment.[2] (Id.) Respondent contends that the instant § 2255

---

[2] In his motion, Petitioner states he is actually innocent of Count Two of the indictment. (Doc. no. 1, p. 4.) However, as Petitioner did not plead guilty to Count Two, and his supporting argument clearly relates to Count Three, the Court construes Ground Three of Petitioner's motion as challenging the knowing and voluntary nature of Petitioner's guilty plea to Count Three of the indictment, possession of firearms by a prohibited person under § 922(g)(3).

motion should be dismissed because Petitioner's claims are barred by the collateral attack waiver set forth in the plea agreement, and because Petitioner's guilty plea was knowing and voluntary. (Doc. no. 3.)

## II. DISCUSSION

### A. By Knowingly and Voluntarily Agreeing to the Collateral Attack Waiver, Petitioner Waived His Ineffective Assistance of Counsel Claims in Grounds One, Two, and Four of His Motion, but not his Claim in Ground Three.

Grounds One, Two, and Four of the instant motion are precluded by the waiver provision in the plea agreement, in which Petitioner waived his right to collaterally attack his conviction and sentence. It is well settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden in the instant case, then Grounds One, Two, and Four in Petitioner's motion are barred from review. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has demonstrated the existence of a valid collateral attack

7

waiver. The plea agreement signed and verified by Petitioner fully set forth that, as a condition of his guilty plea, he was waiving any right to collateral attack of his sentence or the knowing and voluntary nature of his guilty plea. See CR 111-365, doc. no. 60, p. 5 ("[T]o the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding . . . ."). Furthermore, Judge Hall thoroughly went over Petitioner's plea agreement during the plea colloquy, specifically reviewing the waiver provision. (Id., doc. no. 77, pp. 13-14.) After Judge Hall concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Hall. (Id.) Therefore, the record before the Court shows that Judge Hall specifically questioned Petitioner about the waiver provision, and that Petitioner fully understood its significance such that the collateral attack waiver was knowing and voluntary. Weaver, 275 F.3d at 1333. While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

Certain ineffective assistance of counsel claims can survive a valid collateral attack waiver, but "only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). In Ground

One, Petitioner claims his counsel failed to file a post-judgment appeal as requested to challenge the denial of his motion to suppress and the constitutionality of § 922(g)(3), neither of which calls into question the validity of the waiver.[3] Grounds Two and Four, in which Petitioner claims his counsel was deficient for failing to investigate or challenge the constitutionality of § 922(g)(3) prior to his plea, also fail to allege that his counsel's errors affected the validity of his plea. Only in Ground Four does Petitioner even mention his plea, stating that his attorney failed to investigate the law "as it relates to the plea." (Doc. no. 1, p. 5.) However, the supporting argument to Ground Four provides no explanation as to how counsel's failure to investigate and challenge the constitutionality of § 922(g)(3) affected the knowing and voluntary character of Petitioner's guilty plea. (Id.)

In his opposition brief, Petitioner states in conclusory fashion that his counsel's allegedly deficient performance "directly affected both the validity of the waiver and/or the plea itself." (Doc. no. 6, p. 2.) However, Petitioner fails to connect these assertions to the knowing or voluntary nature of his plea or the waiver agreement. In fact, it was not until after Respondent filed the motion to dismiss asserting that Petitioner's claims were barred by the collateral attack waiver—and, notably, that ineffective assistance claims avoid the bar only if they allege the claimed assistance directly affected the validity of the

---

[3] Although an ineffective assistance of counsel claim based on counsel's failure to file an appeal as requested is not barred by an appeal waiver, see Gomez-Diaz v. United States, 433 F.3d 788, 793-94 (11th Cir. 2005), this Court has consistently held that such claims are barred by a valid collateral attack waiver pursuant to Williams. See e.g. Marshall v. United States, No. CV 111-097, 2013 WL 772855, at *2 (S.D. Ga. Feb. 28, 2013); Jones v. United States, No. CV 111-102, 2011 WL 6327519, at *1 (S.D. Ga. Dec. 16, 2011).

waiver or plea (doc. no. 3, pp. 10-11)—that Petitioner provided even this conclusory argument characterizing his claims as such. (See doc. no. 6, p. 2.) In sum, Petitioner's ineffective assistance of counsel claims do not call into question the validity of his guilty plea or the collateral attack waiver, and thus they are barred by the collateral attack waiver. See Williams, 396 F.3d at 1342 n.2. Accordingly, Respondent's motion to dismiss should be granted as to Grounds One, Two, and Four of Petitioner's § 2255 motion.

### B. Petitioner's Guilty Plea Was Knowing and Voluntary.

Having resolved Petitioner's ineffective assistance of counsel claims, the Court will address Ground Three, in which Petitioner alleges that his guilty plea itself was not knowing and voluntary.

#### 1. Standard for Enforceability of Guilty Pleas

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a

constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "Clearly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (quotation omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2. Petitioner's Claim in Ground Three is Without Merit.

Here, the extensive plea colloquy conducted by Judge Hall addresses each of the

11

aforementioned "core principles." Moriarty, 429 F.3d at 1019. Judge Hall informed Petitioner in clear terms of the charges to which Petitioner was pleading guilty, as well as the maximum penalty that might be imposed in the event of Petitioner's conviction, and Petitioner testified that he understood the charges and the maximum penalties that might be imposed. (CR 111-365, doc. no. 77, pp. 14-15, 18-19.) Petitioner testified that his conduct would satisfy the elements of the crimes to which he was pleading guilty, and as to Count Three he admitted that he was a user of marijuana and was in possession of the firearms and ammunition as stated in the indictment. (Id. at 19, 29-30.) Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner stated that he understood his decision to plead guilty would result in a waiver of these rights. (Id. at 13-14.) Petitioner testified that no one had made him any promises to get him to plead guilty, nor had anyone forced or pressured him to do so. (Id. at 3, 14, 30.) In short, Judge Hall's thorough plea colloquy ensured that Petitioner understood both the nature of the charges to which he was pleading guilty and the consequences of his plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019.

Petitioner alleges there is no factual basis in the record establishing that he was an unlawful user of controlled substances, and thus that he was not a prohibited person for the purpose of 18 U.S.C. § 922(g)(3) and is actually innocent. (Doc. no. 1, pp. 4-5.) However, this argument is contradicted by Petitioner's own testimony at the plea hearing, during which he admitted that his conduct satisfied the elements of the crimes to which he was pleading guilty, and that he was a user of marijuana. As noted above, "solemn

declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74; see also United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely.") Thus, given his former sworn testimony, Petitioner cannot now claim that his plea was invalid. Accordingly, the Court finds that the record is clear as to the knowing and voluntary entry of Petitioner's guilty plea, and Respondent's motion to dismiss should be granted as to Ground Three of Petitioner's motion.

3. **Petitioner's Guilty Plea Also Bars His Ineffective Assistance of Counsel Claims in Grounds Two and Four, even if They Were Not Barred by the Collateral Attack Waiver.**

Petitioner's knowing and voluntary guilty plea also bars his ineffective assistance of counsel claims in Grounds Two and Four, even if they were not barred by the collateral attack waiver as stated above, see supra Part II.A. "A defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all nonjurisdictional defects in that defendant's court proceedings." United States v. Yunis, 723 F.2d 795, 796 (11th Cir. 1984). Once a defendant enters a knowing, voluntary guilty plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Thus, as noted above, in guilty plea cases, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." Broce, 488 U.S. at 569. Accordingly, a guilty plea bars

ineffective assistance of counsel claims unless they relate to the defendant's decision to plead guilty. See Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (*per curiam*). As discussed herein, supra Part II.A, Petitioner's claims in Grounds Two and Four do not challenge the knowing or voluntary nature of Petitioner's guilty plea and are therefore barred. Broce, 488 U.S. at 569; Wilson, 962 F.2d at 997; Yunis, 723 F.2d at 796.

### III. CONCLUSION

In sum, Grounds One, Two, and Four of Petitioner's § 2255 motion are foreclosed by the collateral attack waiver contained in Petitioner's written plea agreement. Ground Three is without merit because Petitioner's guilty plea was knowing and voluntary, and thus Grounds Two and Four, in addition to being barred by the collateral attack waiver, are also barred by Petitioner's guilty plea. Accordingly, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED** (doc. no. 3), that the instant § 2255 motion be **DISMISSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 19th day of November, 2013, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE